## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID FLEISHER, MICHAEL CLIME, on behalf of themselves and all others similarly situated, | : : : : | CIVIL NO. |
| Plaintiffs, | : : | |
| v. | : : | **COMPLAINT -- CLASS ACTION** |
| | : | **JURY TRIAL DEMANDED** |
| FIBERON, LLC., | : : | |
| Defendant. | : | |

## CLASS ACTION COMPLAINT

### I.   INTRODUCTION

1.       Throughout the United States, thousands of consumers like Plaintiffs, David Fleisher and Michael Clime, purchased Portico™ Series Decking products, including Portico™ Advantage, ("Portico products," "Portico decking" or "Portico") manufactured, warranted, advertised, distributed and sold by Defendant Fiberon, LLC f/k/a Fiber Composites, LLC ("Fiberon"). These Portico products are used to build decks on residences and other structures.

2.       Portico is not a natural wood product; but rather, is a composite material comprised of approximately equal parts of wood fiber and polyethylene. Because Portico products are 50% thermoplastic, Defendant touts them in marketing and advertising materials as being superior to natural wood products and far easier to maintain. As a result, Portico products command a premium price over natural wood products, generally double the cost for the same amount of pressure treated lumber products.

3.       To entice consumers to spend twice as much for Portico products as they would for lumber, Defendant expressly warrants Portico products for 20 years, and distinguishes Portico products from "[t]raditional wood decking [that] fades, molds, cracks, splinters, and

1

needs to be treated and sealed regularly for the deck to maintain its original look and feel."
Defendant represents that it has "just about eliminated the[se] problems associated with typical
wood decking."

4.      Portico products, however, contain a uniform latent defect.  This defect manifests
itself identically as incurable dark spotting throughout the surface of the deck as revealed by the
photographs of each Plaintiff's deck below:

 

5.      The dark spotting is extensive mold, mildew and/or other fungal growth
(collectively, "fungal growth") that results in unsightly and extensive discoloration over the
entire deck.  This uniform spotting pattern occurs regardless of proper installation, maintenance
and cleaning; recurs after being cleaned using the very cleaning method Defendant recommends;
and cannot be prevented or remediated.

6.      In response to complaints about the defect from consumers, including Plaintiffs,
Fiberon advises its customers to clean their decks - at their own expense - with chemical
products that fail to work, or that appear to work in part before the fungal growth returns soon

after cleaning as badly or worse than before, resulting in the recurrence of the dark spotting that discolors their decks.

7.      Defendant refuses to pay for the costs associated with attempting to clean the decks, and it does not replace the defective material or pay for the replacement labor costs to remove the defective material or to install replacement boards, which often far exceed the costs of the Portico boards themselves. Defendant uniformly rejects claims under its 20 year warranty for this defect, including the warranty claims of Plaintiffs.

8.      As a result of this defect and Defendant's conduct, Plaintiffs have been damaged and have suffered economic loss, and now bring claims under Pennsylvania law and/or under the similar laws of other potentially applicable jurisdictions for: (i) violations of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* ("MMWA"); (ii) breach of express warranty; (iii) breach of implied warranty of merchantability; (iv) violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law; (v) declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*; and (vi) unjust enrichment. Plaintiffs bring suit on behalf of themselves and all other similarly situated persons in the United States who have purchased Portico products for monetary damages, declaratory and equitable relief, and restitution and/or disgorgement of profits.

## II.  PARTIES

### PLAINTIFF DAVID FLEISHER

9.      Plaintiff David Fleisher is a citizen of Pennsylvania and resides in North Wales, Pennsylvania. Mr. Fleisher purchased the Portico decking for $31,500.00, inclusive of materials and labor. Plaintiff Fleisher's decision to purchase his Portico deck over lumber was based in part on it being a low maintenance alternative to wood. During the months of January and

3

February 2010, Plaintiff Fleisher had a Portico deck installed.

  10. After the first season, Mr. Fleisher's Portico deck developed extensive fungal growth, and widespread discoloration in the form of noticeably large black and grey spots.  Soon after discovering the fungal growth, Plaintiff Fleisher's contractor cleaned the deck using a method recommended by Fiberon, without success.  Despite the efforts to clean the deck, the fungal growth and attendant discoloration have reappeared.

  11. A photograph of Plaintiff Fleisher's deck taken on October 17, 2011 appears below:



  12. Plaintiff Fleisher wrote a letter on September 30, 2011 to Defendant Fiberon detailing the dark "leopard" spots of mold across his 850 square foot deck, and seeking relief under the warranty.  Defendant Fiberon responded on October 26, 2011, rejecting any claim under the warranty while admitting the type of stain on Plaintiff Fleisher's deck "is more than likely mold or mildew."

  13. Testing by Plaintiffs' expert of samples from Plaintiff Fleisher's deck have

4

confirmed the presence of stain fungus on the surface of, and penetrating into, his Portico deck.

14.     Plaintiff Fleisher's dark spotting and fungal growth deck problems continue to this day.

**PLAINTIFF MICHAEL CLIME**

15.     Plaintiff Michael Clime is a citizen of Pennsylvania who resides in Coopersburg, Pennsylvania.  He purchased Portico products in 2007 for $494.28, and July 2009 for approximately $2,382.39, and selected it over lumber based in part on it being a low maintenance alternative to wood.

16.     Within months, his deck developed extensive fungal growth, and widespread discoloration in the form of noticeably large black spots over the entire surface of his Portico deck. On or about May 2010, Plaintiff Clime expended considerable time and expense attempting to clean the black spots, without success.  Despite his efforts, the fungal growth and attendant discoloration have reappeared.

17.     A photograph of Plaintiff Clime's deck taken on November 4, 2011, appears below:



18.     Plaintiff Clime wrote an e-mail to Fiberon in April 2011 complaining about the dark spots of mold across his deck, and seeking relief under the warranty.  On April 27, 2011, Defendant Fiberon responded to Mr. Clime's letter rejecting any claim under the warranty while admitting that Mr. Clime has mold on his Portico deck.

19.     Testing by Plaintiffs' expert of samples from Plaintiff Clime's deck have confirmed the presence of stain fungus on the surface of, and penetrating into, his Portico deck.

20.     Plaintiff Clime's dark spotting and fungal growth deck problems continue to this day.

**DEFENDANT FIBERON, LLC**

21.     Defendant Fiberon, formerly known as Fiber Composites, LLC, is privately owned company with operations in North Carolina and Idaho, and does business throughout the United States.  Fiberon marketed, advertised and sold the Portico products purchased by Plaintiffs and other putative Class Members.  Fiberon began manufacturing composite decking in 1997 under the name Fiber Composites, LLC.  On December 28, 2009, Fiber Composites, LLC changed its name to Fiberon, LLC.

### III.  JURISDICTION AND VENUE

22.     This Court has jurisdiction over this litigation pursuant to 28 U.S.C. § 1332(d), as the matter is brought as a class action under Rule 23 of the Federal Rules of Civil Procedure, and the sum of the amount in controversy exceeds $5,000,000.  The requirement of minimal diversity is met as the dispute is between citizens of Pennsylvania and a Defendant from a different state. *See* 28 U.S.C. § 1332(d)(2)(A).

23.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because at least one of the Plaintiffs reside in the Eastern District of Pennsylvania and some of the putative Class

Members also reside in this district. The causes of action for the putative Class Members also

arose, in part, in Pennsylvania and the Defendants regularly transact business within this district.

## IV. FACTUAL ALLEGATIONS

24.     Defendant marketed and sold Portico products as suitable, and superior to

traditional lumber, for constructing outdoor decks, railings and other related structures, such as

stairs and walkways.

25.     Portico is a composite material that is comprised solely of wood fiber and

polyethylene, a thermoplastic material. The wood fiber is contained in a polyethylene matrix.

Portico is approximately 50% wood fiber and 50% thermoplastic material.  There is no mold

inhibitor, such as zinc borate, in Portico products.

26.     The Portico products are made by direct extrusion, a process in which polymer

and wood fibers are mixed and melted in an extruder and then forced through a die to form a

finished structural part.  This process is designed to encapsulate the wood fibers in the

thermoplastic material to render them virtually moisture proof.

27.     This manufacturing and design process fails because incomplete encapsulation

occurs during the manufacturing process.  This causes the Portico products to remain porous, and

therefore, susceptible to moisture penetration to the internal wood fibers.

28.     The moisture penetration is the foundation for the fungal growth that causes the

dark spotting suffered by Plaintiffs and the Classes, and their collective inability to remove that

unsightly dark spotting.

29.     Extruded composite decking such as Portico has been recognized to absorb water

and cause a greater incidence of fungal growth:

> For now, most manufacturers extrude (or force through a die) the composite
> mixture to create deck boards. Injection and compression molding are becoming

7

more common, though.  In these processes, the molten wood-plastic mixture takes shape in the precision molds.  Because the material isn't milled to final shape, there's no exposed wood fiber; the decking has a denser, polymer-rich surface that resists moisture.  Extruded products [such as Portico] tend to absorb more water, which may lead to greater incidence of mold on the surface.

"Synthetic Decking Takes Off," *Fine Homebuilding*, (June/July 2005).

30.     This propensity for fungal growth is compounded by Defendant's micro-DOME technology on the surface of the decking board.  The Portico decking micro-DOME technology creates "a deeply embossed surface" to improve slip resistance and wearability.  The side effect, however, is that this surface is susceptible to standing water in and around the embossing that promotes fungal growth.

31.     Despite these obvious faults, Defendant nonetheless represented and warranted its Portico decking as "able to resist moisture penetration and degradation from fungal rot as the plastic encapsulates and binds the wood together."

32.     Similar composite decking products such as ChoiceDek® and Trek Company, Inc. suffer from strikingly similar problems as those alleged herein against Portico products, and each have faced class action litigation for these problems.  After settlements in those cases in 2008 and 2009, Defendant Fiberon quietly withdrew its Portico products from the market and, upon information and belief, no longer offers a wood fiber based composite decking board.

33.     Prior to withdrawing Portico products from the market, however, Defendant heavily advertised its Portico products directly to consumers, including by way of advertisements and its Internet web site (http://www.porticodecking.com), which is no longer active.

34.     Because Portico decking was priced at a substantial premium to lumber, and admittedly "1.5 to 2 times the cost of pressure treated lumber products," Defendant had to entice consumers to pay at least twice as much to build the same deck with Portico products as it would

cost to build with lumber.  To do so, Defendant touted its 20 year warranty on its Portico

products and its "low deck maintenance."

35.     In comparing Portico products to wood, Defendant stated "Traditional wood

decking fades, molds, cracks, splinters, and needs to be treated and sealed regularly for the deck

to maintain its original look and feel" while Portico "Composite decking material have just about

eliminated the problems associated with typical wood decking."

36.     As such, Defendant marketed and sold Portico decking as "low maintenance,"

representing to consumers that "[g]iven that composites are forgiving, if you skip a few years

and then want to revive the deck, all that is required is that you use the right products."

37.     Defendant warrants Portico products for twenty (20) years from the date of

original consumer purchase. A copy of the warranty is attached hereto as Exhibit A.[1]  Defendant

expressly warrants its Portico products as follows:

> For a period of twenty (20) years from the date of the original consumer purchase
> from an authorized Portico™ Fiber Composite Material distributor, Fiber
> Composites, LLC ("Warrantor") warrants the Decking & Railing will not check,
> splinter, peel, rot, or suffer structural damage from fungal decay.

38.     Portico products experience extensive and unsolvable fungal growth despite being

properly installed and maintained.  Because of the defect alleged herein, this fungal growth

occurs at an alarming rate requiring excessive maintenance while continuously absorbing

moisture from standing water exposing the decking to deterioration from the fungal growth.

39.     The defect that causes the fungal growth issue is insolvable, in that there is no

repair or cleaning that can correct the problems.  Therefore, as a direct result of the defect alleged

herein, this fungal growth renders the Portico decking unusable due to the extensive discoloration

---

[1] Because Defendant has discontinued the sale of, and sought to disassociate itself from, Portico products, the
Portico website, www.porticodecking.com, was disabled.  Thus, the copy of the warranty was retrieved from the
archives of internet webpages from www.porticodecking.com.

in the form of unsightly gray and black spots on the surface of the Portico products.

40.     Defendant Fiberon had failed in its purpose of providing suitable material with which to build and maintain a deck, and it fails to meet its advertised and warranted qualities of being low maintenance, superior to wood, and fit for use without application of sealants or other treatments, as evidenced by the persistent and unsolvable fungal growth.

41.     Other than providing Plaintiffs with an ineffective cleaning method for their decks at Plaintiffs' own cost, Defendant has refused to provide any further relief.

42.     The latent defect of Portico products has become a pervasive issue among manufacturers of composite decking materials comprised of wood fiber and a thermoplastic material.  This issue has caused design and manufacturing modifications to prevent this fungal growth, or as in the circumstance of Portico products, their withdrawal from the market.

43.     Plaintiffs, and each member of the Class, were injured by Defendant's conduct as they bought Portico products which Defendant represented, advertised, promoted and sold as warranted against structural damage from fungal growth, and as requiring low maintenance.

44.     Instead, Defendant failed to inform consumers what they knew: moisture would immediately invade Portico products and the decking surface would be enveloped by dark spotting caused by fungal growth that would require excessive maintenance to prevent and avoid structural damage to the Portico products it sold.

45.     Plaintiffs and the Class would not have purchased Portico products and/or had them installed had Defendant disclosed their propensity to develop dark spotting caused by fungal growth, as alleged herein.

46.     The latent defect of Portico products complained of herein existed at the time the Portico products left Defendant's manufacturing facilities.

## V.  TOLLING

47.    Because the defect is latent and not detectable until manifestation, Plaintiffs and the Class were not reasonably able to discover the problem until after installation, despite their exercise of due diligence.

48.    Defendant had a duty to inform Plaintiffs and the Class of the defects described herein of which it had widespread knowledge at the time of sale. Defendant's failure to document or disclose the known defects in its products, and concealment of known defects from Plaintiffs and Class Members constitute fraudulent concealment that equitably tolls the applicable statutes of limitation.

49.    Even after Class Members became aware of the persistent fungal growth on their Portico decks, Defendant prevented them from ascertaining the inherent defect by informing Plaintiffs and Class Members that their mold-laden decks were due to inadequate maintenance.

50.    The facts concealed and/or not disclosed by Defendant to Plaintiffs and the Class are material facts in that a reasonable person would have considered those facts to be important in deciding whether or not to purchase Portico products. Had Plaintiffs and the Class known the defective nature of Portico products, they would not have purchased them or would have paid less for them.

51.    Any applicable statutes of limitation have, therefore, been tolled by Defendant's concealment of the facts alleged herein. Further, Defendant is estopped from relying on any statutes of limitation because of its concealment of the defective nature of Portico products.

## VI.  CLASS ACTION ALLEGATIONS

52.    Plaintiffs bring all their claims as class claims pursuant to Fed. R. Civ. P. 23.  The requirements of Fed. R. Civ. P. 23(a), (b)(2), and (b)(3) are met with respect to the Classes

defined below.

53. The (b)(2) Injunctive Relief Class consists of:

All persons in the United States who purchased Portico products. Excluded from the class are officers, representatives, or agents of Defendant, as well as the judge presiding over this case and his or her immediate family members. In addition, notwithstanding the foregoing, all claims for personal injury and wrongful death are excluded from the Class.

54. The (b)(3) State Sub-Classes consist of:

**Pennsylvania:** All persons in the Commonwealth of Pennsylvania who purchased Portico products;

and/or,

**Other States:** All persons in the States of Alaska, Arkansas, Colorado, Delaware, District of Columbia, Hawaii, Indiana, Kansas, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, North Dakota, Oklahoma, Rhode Island, South Carolina, South Dakota, Texas, Utah, Virginia, Washington, West Virginia, and Wyoming who purchased Portico products.

**Numerosity**

55. Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the Classes are so numerous that the joinder of all members is impracticable. The Classes are composed of an easily ascertainable, self-identifying set of persons who purchased Portico products to construct decks and other structures.

**Commonality**

56. There are numerous questions of law and fact common to Plaintiffs and the Classes, including the following:

    a.    Whether Portico products at issue in this lawsuit are defective;

    b.    Whether Defendant knew or should have known of the inherent design and/or manufacturing defect in Portico products;

c.      Whether Defendant misrepresented that the Portico products had certain qualities, characteristics or benefits;

d.      Whether Defendant represented that its products were of a particular standard, quality or grade when they were not and/or when Defendant knew or should have known that they are of another standard, quality or grade;

e.      Whether Defendant fraudulently concealed from and/or failed to disclose to Plaintiffs and the Classes the inherent problems with Portico products;

f.      Whether Defendant had a duty to Plaintiffs and the Classes to disclose the inherent problems with Portico products;

g.      Whether the facts Defendant misrepresented, concealed or failed to disclose were material;

h.      Whether as a result of Defendant's concealment of and/or failure to disclose material facts, Plaintiffs and the Classes acted to their detriment by purchasing Portico products;

i.      Whether Defendant should be declared financially responsible for notifying all Class Members of the problems with Portico products and for the costs and expenses of repair and replacement of all such Portico products;

j.      Whether Portico products are covered by express or implied warranties;

k.      Whether Defendant has acted or refused to act on grounds generally applicable to the Injunctive Relief Class and/or either State Sub-Class;

l.      Whether Plaintiffs and the State Sub-Classes are entitled to damages, and the amount of such damages; and

m.      Whether Defendant's warranty documents are subject to reformation.

**Typicality**

57.     The claims of Plaintiffs are typical of the claims of the Class in that the representative Plaintiffs, like all Class Members, own defective Portico products, and have been damaged by Defendant's uniform misconduct like those members of the State Sub-Classes.

13

58.     Furthermore, the factual bases of Defendant's misconduct are common to all Class Members and represent a common thread of misconduct resulting in injury to all members of the Class.

**Fair and Adequate Representation**

59.     The Plaintiffs will fairly and adequately protect the interests of the Classes. Plaintiffs have retained counsel who are experienced in consumer class-action litigation. Plaintiffs have no interests which are adverse to, or in conflict with, other members of the Classes.

**The Prerequisites of Rule 23(b)(2) are Satisfied.**

60.     The prerequisites to maintaining a class action for injunctive, declaratory and equitable relief pursuant to Rule 23(b)(2) exists as Defendant has acted or refused to act on grounds generally applicable to the Class thereby making appropriate injunctive, declaratory and equitable relief with respect to the Injunctive Relief Class as a whole.

**The Prerequisites of Rule 23(b)(3) are Satisfied.**

61.     The questions of law and fact common to the Class Members predominate over any questions which may affect only individual members.

62.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Moreover, absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.

63.     The prosecution of separate actions by the individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant.  In contrast, the conduct

of this action as a class action presents far fewer management difficulties, conserves judicial

resources and the parties' resources, and protects the rights of each Class member.

## VII. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### (Violation of Magnuson-Moss Consumer Products Warranties Act, 15 U.S.C. § 2301, et seq. ("MMWA")

### (On behalf of all Classes)

64.     Plaintiffs hereby incorporate by reference the allegations contained in the

preceding paragraphs of this Complaint.

65.     The MMWA provides a private right of action by purchasers of consumer products

against manufacturers or retailers who, *inter alia*, fail to comply with the terms of an implied or

written warranty.  15 U.S.C. § 2310(d)(1). As alleged above, Defendant has failed to comply

with the terms of its express and implied warranties with regard to the Portico products that it

sold.

66.     Portico products are consumer products, as that term is defined in 15 U.S.C. §

2301(a).

67.     Defendant is a warrantor, as that term is defined in 15 U.S.C. § 2301(5).

68.     The Plaintiffs and each member of the Classes are consumers, as that term is

defined in 15 U.S.C. § 2301(3).

69.     The MMWA provides a cause of action for breach of warranty or other violations

of the Act.  15 U.S.C. § 2310(d)(1).  Defendant has also breached its warranty to provide goods

that are free from material defects in workmanship and materials.  It also has breached its

implied warranty of merchantability, which it cannot disclaim under the MMWA, 15 U.S.C. §

2308(a)(1), by failing to provide merchantable goods.  Plaintiffs have suffered damages as a

result of Defendant's breaches of express and implied warranties as set forth herein; thus, this action lies. 15 U.S.C. § 2310(d)(1)-(2).

70.    Defendant was provided notice of the breach of warranty claims that were raised by Plaintiffs from the sale of Portico and afforded a reasonable opportunity to cure, but Defendant never cured its breach which is common to other members of the Class. Once Plaintiffs' representative capacity is determined, however, notice and opportunity to cure on behalf of the Class – through Plaintiffs – can again be provided under 15 U.S.C. § 2310(e).

71.    Defendant's warranty disclaimers, exclusions, and limitations were unconscionable because they disclaimed a defect known but not disclosed.

72.    In addition, Defendant's written warranty contains terms purportedly limiting its liability relative to defective products to replacement of the product "in an amount equal to the volume of defective material as scheduled on the prorated warranty schedule." These terms appear in the same font and type-size as the rest of the terms of the warranty; they are not bolded; and they are not printed in a contrasting color. In short, they are inconspicuous, and that lack of conspicuousness violates the MMWA. 15 U.S.C. § 2302(a).

73.    Defendant's acts and omissions in violation of the MMWA are "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce," and they are unlawful. 15 U.S.C. § 2310(b); 15 U.S.C. § 45(a)(1).

74.    Plaintiffs and the State Sub-Classes members have suffered damages as a result of Defendant's breaches of warranty and violations of the MMWA.

75.    Additionally, or in the alternative, the MMWA provides for "other legal and equitable" relief where there has been a breach of warranty or failure to abide by other obligations imposed by the MMWA. 15 U.S.C. § 2310(d)(1). Plaintiffs and the Injunctive Relief

16

Class seek declaratory relief relating to the defect alleged herein, the remediation of that defect and its coverage under available express and implied warranties. In addition, Plaintiffs ask that Defendant be enjoined from acting unlawfully as alleged herein, including with respect to its practices aimed at discouraging customers who purchased defective Portico products from seeking the full panoply of remedies available to them.

76.      Plaintiffs also seek and an award of costs and expenses, including attorneys' fees, under the MMWA to prevailing consumers in connection with the commencement and prosecution of this action. 15 U.S.C. § 2310(d)(2). Plaintiffs and the prospective class intend to seek such an award, including expert witness costs and other recoverable costs, as prevailing consumers at the conclusion of this lawsuit.

### SECOND CLAIM FOR RELIEF
### (Breach of Express Warranty)
### (On behalf of all Classes)

77.      Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

78.      Defendant's express warranty provides that: "For a period of twenty (20) years from date of the original consumer purchase from an authorized Portico™ Fiber Composite Material distributor, Fiber Composites, LLC ('Warrantor') warrants the Decking & Railing will not check, splinter, peel, rot, or suffer structural damage from fungal decay." *See* Exh. A.

79.      The express warranty, affirmations, promises, assurances, and descriptions provided by Defendant were the basis of the bargain for Plaintiffs and the Class Members in purchasing or acquiring the Portico product.

80.      Defendant has breached its express warranty to Plaintiffs and Class Members in that the Portico products were defective from the day they were sold and are substantially certain to experience staining from fungal growth.

17

81.     As a direct result of the failure of the Portico products to perform as warranted, Plaintiffs and the Class have incurred and will continue to incur expenses to maintain, clean, and replace Portico products.

82.     Any contractual language contained in Defendant's express warranty that attempts to limit remedies is unconscionable, fails to conform to the requirements for limiting remedies under applicable law, causes the warranty to fail of its essential purpose, and is, thus, unconscionable, unenforceable and/or void.

83.     Defendant has been on notice of its breach of express warranty by Plaintiffs and Class Members through warranty claims previously made.

84.     Defendant continued to conceal the defective nature of its Portico products even after members of the Class began to report problems. Defendant continues to cover up and conceal the true nature of the problem, and ultimately removed Portico from the market.  Instead, Defendant Fiberon blames the unsolvable fungal growth on inadequate cleaning and maintenance.

85.     As a direct and proximate result of Defendant's misconduct, Plaintiffs and the Class are entitled to compensatory, incidental, and consequential damages, including full refunds or the replacement of the defective decking material with non-defective material of at least the quality and grade marketed and promised, as well as the shipment of replacement material to the Plaintiffs' homes, the cost of labor to remove the defective material, the cost to dispose of the defective material, and the cost of labor and supplies, including but not limited to the fasteners and all parts necessary to install the replacement material, all at Defendant's expense.

86.     Additionally, or in the alternative, Plaintiffs and the Injunctive Relief Class seek declaratory relief relating to the defect alleged herein, the remediation of that defect and its

coverage under the available express warranties.

## THIRD CLAIM FOR RELIEF
### (Breach of Implied Warranty of Merchantability)
### (On behalf of all Classes)

87.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

88.     Defendant is a merchant as defined by 13 Pa. Con. Stat. § 2104, and sold Portico decking to Plaintiffs and members of the Class for residential decking use.

89.     Defendant impliedly warranted to Plaintiffs and members of the Class that Portico was free of defects, and was merchantable and fit for the ordinary purpose for which such goods are used, including for residential decking use.

90.     Plaintiffs, or their agents, relied on the skill and judgment of Defendant in using the aforesaid product.

91.     As alleged herein, Defendant's sales of Portico breached the implied warranty of merchantability because the Portico products developed extensive and unsolvable fungal growth and discoloration.  Portico products are therefore defective, unmerchantable, and unfit for their intended purpose at the time of sale. Portico products develop extensive and unsolvable fungal growth, dark spotting and/or discoloration due to the defect or defects that plague them.  Portico products are also not of low maintenance, such that they do not conform to promises or affirmations made.

92.     After Plaintiffs were made aware of their damages as a result of the aforesaid Portico products, they gave reasonable and adequate notice to Defendant that these products were defective, unmerchantable, and unfit for their intended use or purpose.  Defendant has failed to cure.

93.     Defendant's purported disclaimer or exclusion of the implied warranty of merchantability its written warranty is invalid, void, and unenforceable per Magnuson-Moss, 15 U.S.C. § 2308(a)(1).

94.     The Breach of Implied Warranty of Merchantability laws in the following states do not differ, or differ in an immaterial way, from the laws of Pennsylvania: Alaska, Arkansas, Colorado, Delaware, District of Columbia, Hawaii, Indiana, Kansas, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, North Dakota, Oklahoma, Rhode Island, South Carolina, South Dakota, Texas, Utah, Virginia, Washington, West Virginia, and Wyoming.  Thus, this claim is likewise asserted on behalf of residents of these states.

95.     As a direct and proximate result of the breach of said warranty, Plaintiffs and the Class Members suffered and will continue to suffer losses as alleged herein in an amount to be determined at trial, including full refunds or the replacement of the defective decking material with non-defective material of at least the quality and grade marketed and promised, as well as the shipment of replacement material to their homes, the cost of labor to remove the defective material, the cost to dispose of the defective material, and the cost of labor and supplies, including but not limited to fasteners and all parts necessary to install the replacement material, all at Defendant's expense.

96.     Additionally, or in the alternative, Plaintiffs and the Injunctive Relief Class seek declaratory relief relating to the defect alleged herein, the remediation of that defect and its coverage under the available implied warranties.

## FOURTH CLAIM FOR RELIEF
### (Violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law)
### (On behalf of a Pennsylvania State Sub-Class Only)

97.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

98.     Plaintiffs and the Class members are "person[s]" as that term is defined by 73 P.S. § 201-2(2).

99.     Defendant's conduct and omissions alleged herein occurred throughout the United States, including within the Commonwealth of Pennsylvania, and constitutes deceptive conduct that creates a likelihood of confusion or misunderstanding in connection with the sale of Portico products.

100.    Defendant's conduct and omissions alleged herein violated Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-2(4)(v), (vii), (xiv), and/or (xxi).

101.    Plaintiffs, and others similarly situated, justifiably relied on Defendant's skill and expertise in designing, manufacturing, and warranting for sale these defective decking products. Defendant, at all times material hereto, knew about and possessed superior knowledge of these latent defects and Plaintiffs and the Class could not reasonably have been expected to learn or discover them until after the decking was purchased, installed, and the spotting repeatedly occurred.

102.    Plaintiff and the Class have each been damaged by the deceptive acts of Defendant in connection with its marketing, advertising, sale, and warranting of Portico products, through the purchase of the Portico products, the purchase of those Portico products at a premium price as compared to lumber products, and the purchase of goods and other specialized products in unsuccessful efforts to remove the dark spotting and maintain the Portico products.

21

103. Plaintiffs and other members of the Class pursuant to the Pennsylvania Unfair Trade Practices and Consumer Protection Law, § 201-9.2 seek to recover either their actual damages or one hundred dollars ($100.00), whichever is greater, together with trebling of actual damages, counsel fees, expenses and costs, as well as any and all such other items of damage and equitable relief available.

### FIFTH CLAIM FOR RELIEF
### (Declaratory Relief Pursuant to 28 U.S.C. § 2201, *et seq.*)
### (On behalf of Injunctive Relief Class)

104. Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

105. There is an actual controversy between Defendant and the Injunctive Relief Class concerning the existence of a defect in Portico products, coverage under Defendant's express warranty for that defective condition, and the availability of coverage under implied warranties.

106. Pursuant to 28 U.S.C. § 2201, this Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

107. Defendant has wrongly denied the existence of the defect alleged herein in its Portico products, coverage under its express warranty, and coverage under any implied warranties.

108. Plaintiff therefore seeks a declaration that the Portico products have the alleged defect, must notify the Injunctive Relief Class of that defect, and the available express and/or implied warranties provide coverage to the Injunctive Relief Class for that defect.

## SIXTH CLAIM FOR RELIEF
### (Unjust Enrichment)
### (On behalf of All Classes)

109.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

110.    Defendant received monies as a result of Plaintiffs' and Class Members' purchases of Portico products, and Defendant wrongfully accepted and retained these benefits to the detriment of Plaintiffs and Class Members.

111.    Defendant's enrichment at the expense of Plaintiffs and Class Members was unjust.

112.    As a result of Defendant's wrongful conduct, as alleged above, Plaintiffs and the Class are entitled to restitution from and institution of a constructive trust disgorging all profits, benefits, and other compensation obtained by Defendant, plus attorneys' fees, costs, and interest thereon.

## VIII. RELIEF REQUESTED

113.    Plaintiffs, on behalf of themselves and all others similarly situated, request that the Court enter judgment against Defendant, as follows:

114.    An order pursuant to Rule 23 certifying the proposed Classes, designating Plaintiffs as named representatives of the Class, and designating the undersigned as Class Counsel;

115.    A declaration that Defendant is financially responsible for notifying all Class Members of the problems with Portico;

116.    An order requiring Defendant to remove and replace Plaintiffs' and Class Members' decks with a suitable alternative decking material of Plaintiffs' and Class Members'

23

choosing;

117.    An award to Plaintiffs and the Class of compensatory, consequential, and incidental damages, including but not limited to: awards of damages including a full refund, declaratory relief as appropriate, replacement of defective decking material with non-defective material of suitable type and class, restitution, or disgorgement, as applicable, in such amounts to be determined at trial;

118.    An award of punitive damages as otherwise available at law or equity, and in an amount to be determined at trial;

119.    A Declaratory Judgment declaring the Portico products contain the alleged defect, that Defendant must notify the Injunctive Relief Class of that defect, and that coverage is available to the Injunctive Relief Class under the express and/or available implied warranties.

120.    An award of attorneys' fees and expenses, to include expert witness fees, as provided by law, including the MMWA;

121.    An award of pre-judgment and post-judgment interest, as provided by law; and

122.    Such other or further relief as may be appropriate under the circumstances.

## IX. DEMAND FOR JURY TRIAL

123.   Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.


DATE:  March 14, 2012

BY: _____
Simon B. Paris
Patrick Howard (PA Atty. I.D. No. 88572)
Charles J. Kocher (PA Atty. I.D. No. 93141)
**SALTZ, MONGELUZZI, BARRETT
& BENDESKY, P.C.**
1650 Market Street, 52nd Floor
Philadelphia, PA  19103
Phone:  (215) 496-8282
Fax:  (215) 496-0999
E-mail:  sparis@smbb.com
E-mail:  phoward@smbb.com
E-mail:  ckocher@smbb.com

Donald L. Perelman
Roberta D. Liebenberg
Gerard A. Dever
**FINE, KAPLAN AND BLACK, P.C.**
1835 Market Street, 28th Floor
Philadelphia, PA  19103
Telephone: (215) 567-6565
Fax: (215) 568-5872
E-mail:  dperelman@finekaplan.com
E-mail:  gdever@finekaplan.com

Steve W. Berman
Anthony D. Shapiro
Robert F. Lopez
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1918 Eighth Avenue, Suite 3300
Seattle, WA  98101
(206) 623-7292
steve@hbsslaw.com
tony@hbsslaw.com

***Attorneys for Plaintiffs and the Proposed Classes***

25