IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID FLEISHER, MICHAEL CLIME, | : | CIVIL ACTION |
| GARY IPPOLITO, ROBERT L. | : | |
| LIVINGSTON, and DAVID TAILLON, on | : | |
| behalf of themselves and all others similarly | : | |
| situated | : | |
| | : | |
| v. | : | |
| | : | |
| FIBER COMPOSITES, LLC | : | NO.  12-1326 |

### MEMORANDUM

**Padova, J.**                                                                                    **November 2, 2012**

Plaintiffs bring this putative class action for breach of warranty and other claims arising

out of Defendant Fiber Composites, LLC's ("Fiber") sale of defective deck materials to named

Plaintiffs in Pennsylvania, New Jersey, New York, and Massachusetts.  Presently before the

Court is Fiber's Motion to Dismiss.  For the reasons that follow, we grant the Motion in part and

deny it in part.

## I.        BACKGROUND

### A.        Introduction

The First Amended Complaint ("FAC") alleges the following facts.  Defendant Fiber

manufactured, advertised, and sold Portico™ Series Decking products, including Portico™

Advantage and Eclipse composite decking (collectively "Portico") to consumers throughout the

United States.  (FAC ¶ 1.)  Unlike natural wood decking products, Portico is made up of a

composite material comprised of equal parts of wood fiber and polyethylene, a thermoplastic

material.  (Id. ¶ 40.)  Portico is manufactured by direct extrusion, a process by which

polyethylene and wood fibers are mixed together and melted in an extruder, then forced through

a die to form a finished structural part.  (Id. ¶ 41.)  This process is designed to completely

encapsulate the wood fibers in the polyethylene, rendering them virtually moisture proof.  (Id.)
Portico products were sold at nearly double the price of natural wood products.  (Id. ¶ 50.)

Fiber expressly warranted Portico for a twenty-year period, guaranteeing that "the
Decking & Railing will not check, splinter, peel, rot, or suffer structural damage from fungal
decay."  (FAC Ex. A, "Limited Warranty.")   This warranty was limited by the following
disclaimer:

> THE FOREGOING WARRANTY IS EXCLUSIVE AND IN
> LIEU OF ANY AND ALL OTHER WARRANTIES WITH
> RESPECT TO Portico™ FIBER COMPOSITE MATERIAL.
> WARRANTOR DISCLAIMS ANY AND ALL OTHER
> WARRANTIES, INCLUDING WITHOUT LIMITATION ANY
> IMPLIED WARRANTY OF MERCHANTABILITY OR
> FITNESS FOR A PARTICULAR PURPOSE.
>
> Purchaser's sole remedy for any claim whatsoever arising out of
> the purchase, use, storage, or possession of Portico™ Fiber
> Composite Material (whether such claim arises is contract,
> warranty, tort, strict liability or otherwise) including without
> limitation any claim that Portico™ Fiber Composite Material failed
> to perform as warranted above, shall be replaced with new
> Portico™ Fiber Composite Material in an amount equal to the
> volume of defective material as scheduled on the prorated warranty
> schedule.

(Id.)

Fiber made the following representations regarding Portico that appeared on its website
and on contractors' websites: Portico is unlike "[t]raditional wood decking [that] fades, molds,
cracks, splinters, and needs to be treated and sealed regularly for the deck to maintain its original
look and feel" (id. ¶ 51); "Portico Eclipse is slip resistant, has a quality surface finish that
reduces dirt and mold buildup and will not check, split, or warp" (id. ¶ 49); Portico has "just
about eliminated the problems associated with typical wood decking" (id. ¶ 51); Portico is "able
to resist moisture penetration and degradation from fungal rot as the plastic encapsulates and

binds the wood together" (<u>id.</u> ¶ 46); "[l]ong after installation, [Portico] . . . will stay beautiful and provide you with years of outdoor enjoyment" (<u>id.</u> ¶ 56); and Portico has "consistent color throughout the board" (<u>id.</u> ¶ 57).

The named Plaintiffs are consumers from Pennsylvania, New Jersey, New York, and Massachusetts, who purchased Portico decking materials. (<u>Id.</u> ¶¶ 9, 15, 21, 27, 31.) Soon after installation, Plaintiffs noticed dark spotting on the surface of their decks (<u>id.</u> ¶¶ 10, 16, 22, 28, 32), which has been determined to be extensive mold, mildew, and/or fungal growth ("fungal growth") resulting in discoloration of the deck surface. (<u>Id.</u> ¶ 5.) The fungal growth is due to a uniform latent defect in Portico that occurs regardless of proper installation, maintenance, and cleaning, and cannot be prevented or remediated. (<u>Id.</u>) The Portico manufacturing process causes this latent defect because it does not result in complete encapsulation of the wood fibers, making Portico susceptible to moisture and microbe penetration to the internal wood fibers. (<u>Id.</u> ¶ 42.) This moisture and microbe penetration is the foundation for the fungal growth that caused the dark spotting on Plaintiffs' decks. (<u>Id.</u> ¶ 43.) In addition, Portico was manufactured with Micro-DOME technology, which creates an embossed surface on the boards which collects standing water and promotes fungal growth. (<u>Id.</u> ¶ 45.) Fiber failed to inform customers that moisture would immediately invade Portico and the decking surface would be enveloped with irremediable dark spotting caused by fungal growth. (<u>Id.</u> ¶ 65.)

After discovering the fungal growth on their decks, four of the five named Plaintiffs complained to Fiber. (<u>Id.</u> ¶ 6.) Fiber refused to refund the named Plaintiffs for the costs of cleaning their decks or to replace their Portico under the Limited Warranty, but merely advised Plaintiffs to chemically clean their decks. (<u>Id.</u> ¶¶ 6-7.) Plaintiffs cleaned their decks as directed, but the chemical products only worked briefly, or failed to work altogether, resulting in

recurrence of the fungal growth.  (<u>Id.</u> ¶ 6.)  To this day, Fiber has not provided any further relief.  (<u>Id.</u> ¶ 62.)

Plaintiffs seek to bring this action on behalf of themselves and two sub-classes.  The first Class is an Injunctive/Declaratory Relief Class pursuant to Federal Rule of Civil Procedure 23(b)(2), consisting of all persons in the United States who purchased Portico products.  (<u>Id.</u> ¶ 74.)  The Second Class is a Rule 23(b)(3) Class made up of five sub-classes: all persons who purchased Portico products in (1) Massachusetts, (2) Pennsylvania, (3) New Jersey, (4) New York, and (5) other states.  (<u>Id.</u> ¶ 75.)

The FAC asserts the following causes of action: Violation of the Magnuson-Moss Consumer Products Warranties Act (all classes) (First Claim for Relief); Breach of Express Warranty (all classes) (Second Claim for Relief); Breach of Implied Warranty of Merchantability (all classes except the New York sub-class) (Third Claim for Relief); Violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law (the Pennsylvania sub-class) (Fourth Claim for Relief); Violation of the Massachusetts Consumer Protection Act (the Massachusetts sub-class) (Fifth Claim for Relief); Violation of the New Jersey Consumer Fraud Act (the New Jersey sub-class) (Sixth Claim for Relief); Violation of the New York Consumer Protection Act (the New York sub-class) (Seventh Claim for Relief); Declaratory Relief (the Injunctive/Declaratory Relief Class) (Eighth Claim for Relief); and Unjust Enrichment (all classes) (Ninth Claim for Relief).  Fiber has moved to dismiss all nine counts against it for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

## II.   **LEGAL STANDARD**

In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6),

the court takes the factual allegations of the complaint as true and draws all reasonable inferences in favor of the plaintiff. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citing Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)); see Mayer v. Belichick, 605 F.3d 223, 229 (3d Cir. 2010).  Legal conclusions, however, receive no deference, and the court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986) (cited with approval in Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

A plaintiff's pleading obligation is to set forth "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), which gives the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555 (quotation omitted) (alteration in original).  The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (citing Twombly, 550 U.S. at 556).  In the end, we will dismiss a complaint if the factual allegations in the complaint are not sufficient "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1216, at 235-36 (3d ed. 2004)).

## III.    DISCUSSION

### A.    Breach of Express Warranty[1]

---

[1] Plaintiffs' claim for violation of the Magnuson-Moss Consumer Products Warranty Act (the "Magnuson-Moss Act"), their first claim for relief, depends upon the existence of either an express or implied warranty.  Consequently, we address Plaintiffs' arguments with respect to Plaintiffs' breach of express warranty (Second Claim for Relief) and breach of implied warranty (Third Claim for Relief) first.

Fiber argues that Plaintiffs' breach of express warranty claim should be dismissed because: (1) the FAC does not allege a breach of a term in the Limited Warranty; (2) no other express warranties were created in Fiber's promotional materials; (3) if other express warranties were created, Fiber properly disclaimed them in its Limited Warranty; and (4) if any express warranties were created, they did not become part of the basis of the bargain in Plaintiffs' purchase of Portico.

Plaintiffs contend that the FAC contains allegations of fact that support a claim for breach of Fiber's Limited Warranty as well as breach of express warranties created by Fiber's representations in promotional materials describing Portico's quality and characteristics.   An express warranty is "a promise . . . that a good will conform to a specific description."  Knipe v. SmithKline Beecham, 583 F. Supp. 2d 602, 625 (E.D. Pa. 2008) (citation omitted).   An express warranty is created by:

> (1) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
>
> (2) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
>
> (3) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

13 Pa. Cons. Stat. § 2313(a).[2]  In order to survive a motion to dismiss, a complaint asserting a

---

[2] The parties have not raised choice of law in their submissions, nor have they briefed the issue.  A court is not required to perform a choice of law analysis on a Rule 12(b)(6) motion. See Johansson v. Cent. Garden & Pet Co., 804 F. Supp. 2d 257, 262-63 (D.N.J. 2011) ("Since the choice-of-law issue has not yet been fully briefed and may be premature, the Court declines to address the full analysis at this time.").  The parties have generally cited to Pennsylvania law, and have not identified any relevant material differences in state law that impact the breach of express warranty claim, so, accordingly, we apply Pennsylvania law.

claim for breach of an express warranty must "provide more than 'bald assertions,' and identify specific affirmations by Defendant that could be found to constitute an express warranty." Snyder v. Farnam Cos., Inc., 792 F. Supp. 2d 712, 722 (D.N.J. 2011) (listing cases).

### 1.    The Limited Warranty

The Limited Warranty guarantees that Portico products "will not check, splinter, peel, rot, or suffer structural damage from fungal decay."  (Limited Warranty.)  Fiber argues that the FAC does not allege that any terms of the Limited Warranty were breached by Portico's latent defect that caused fungal growth, as the FAC does not allege that Plaintiffs' decks suffer "rot" or "structural damage from fungal decay."  The FAC alleges that Plaintiffs suffered damage to their decks in the form of, *inter alia*, "incurable dark spotting" (FAC ¶ 4), "unsightly and extensive discoloration" (id. ¶ 5); "extensive discoloration in the form of unsightly black and gray spots" (id. ¶ 60); and "irremediable staining from fungal growth" (id. ¶ 106).  The FAC does not allege, and Plaintiffs do not argue, that these damages constitute "rot" or "structural damage from fungal decay" as stated in the Limited Warranty.  Accordingly, we conclude that the FAC does not state a claim upon which relief may be granted based on a breach of the terms of the Limited Warranty.

### 2.    Promotional Materials

Plaintiffs maintain that the FAC alleges that Fiber made representations in promotional materials that also constitute express warranties.   Specifically, the FAC alleges that Fiber expressly warranted the following:

> "Your choice of decking design and material will influence the overall appearance of your home and ultimately, its resale value. At some point, homeowners will sell their homes and the homebuyer does not want to be faced with a series of expensive home improvements." (FAC ¶ 101, Ex. B.)

"Long after installation, Portico's composite decking material will stay beautiful and provide you with years of outdoor enjoyment." (Id. ¶ 102, Ex. B.)

Portico products have "consistent color throughout the board" and "have the look of a hardwood floor." (Id. ¶ 103, Ex. B.)

Portico "has a quality surface finish that reduces dirt and mold buildup." (Id. ¶ 49.)

Portico is "able to resist moisture penetration and degradation from fungal rot as the plastic encapsulates and binds the wood together." (Id. ¶ 46.)

Fiber argues that the FAC does not assert a plausible claim for breach of warranty based on these statements because the FAC does not allege the existence of any statement made by Fiber "inside or outside the express warranty . . . that constitutes an affirmation of fact or promise that . . . Portico products would not stain as a result of fungal growth on the decks." (Def.'s Mem. at 8.)  Whether these representations constitute express warranties depends upon whether they constitute an "affirmation of fact or promise . . . which relates to the goods." 13 Pa. Cons. Stat. § 2313(a).  Of the five alleged representations, all of which concern the quality and characteristics of Portico to resist fungal growth, we find that two constitute express warranties:[3] (1) that Portico products have "a quality surface finish that reduces dirt and mold buildup;" and (2) that Portico products are "able to resist moisture penetration and degradation from fungal rot."  (FAC ¶¶ 49, 46.)  These representations are not exaggerations or overstatements "expressed in broad, vague, and commendatory language," Castrol Inc. v. Pennzoil Co., 987 F.2d 939, 945 (3d Cir. 1993), but rather specifically describe Portico's ability to resist moisture and fungal growth.  Accordingly, we conclude that the FAC alleges two representations that

_____

[3] The FAC also alleges that Portico samples were available at retail stores and that those samples constitute express warranties as to Portico's quality.  (Id. ¶ 104.)  However, the FAC fails to plead sufficient facts to support this claim because it does not describe the qualities or characteristics of the samples with respect to their ability to resist fungal growth.

constitute express warranties made by Fiber as to the quality and characteristics of Portico products, and we limit further discussion of this issue to these two representations.

### 3.   The Limited Warranty's Disclaimer

Fiber argues that the disclaimer in the Limited Warranty precludes liability for breach of warranty in this case.  As we discussed earlier, the Limited Warranty contains a disclaimer of "any and all other warranties."   (Limited Warranty.)   "[C]ontractual provisions limiting warranties, establishing repair or replacement as the exclusive remedy for breach of warranty and excluding liability for special, indirect and consequential damages in a commercial setting are generally valid and enforceable" under Pennsylvania law.  New York State Elec. & Gas Corp. v. Westinghouse Elec. Corp., 564 A.2d 919, 924 (Pa. Super. Ct. 1989) (citations omitted).  Fiber maintains that the Limited Warranty contains the sole terms of its warranty, and that the disclaimer in the Limited Warranty is enforceable and effectively limits warranty terms to those set out in the Limited Warranty.

However, the Uniform Commercial Code provides that "[w]ords or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other."   13 Pa. Cons. Stat. § 2316(a).  "This section 'seeks to protect a buyer from unexpected and unbargained language of disclaimer by denying effect of such language when inconsistent with language of express warranty.'"  Morningstar v. Hallett, 858 A.2d 125, 131 (Pa. Super. Ct. 2004) (quoting 13 Pa. Cons. Stat. § 2316(a) cmt. 1).  In other words, "[a] provision that there are no express warranties will be ignored when clearly inconsistent with statements that were made and that, by themselves, would constitute express warranties."  Larry Lawrence, Anderson on the Uniform Commercial Code § 2-316:101 (3d ed. 2009).

Consequently, when otherwise valid disclaimers conflict with existing express warranties, the disclaimers are deemed inoperative. See Pocono Artesian Waters Co. v. Leffler Sys., Civ. A. No. 90-1928, 1991 WL 22075, at *3 (E.D. Pa. Feb. 19, 1991) (refusing to enforce a disclaimer of express warranties that was inconsistent with express warranty made by defendant); Effanzee Assocs. v. Thermo Electron Corp., Civ. A. No. 92-6583, 1994 WL 6885, at *5 (E.D. Pa. Jan. 6, 1994) (enforcing a disclaimer that was "not inconsistent with any express warranty which may have been created by [the defendant's] promotional material"); see also Viking Yacht Co. v. Composites One LLC, 496 F. Supp. 2d 462, 470 (D.N.J. 2007) (recognizing that an otherwise enforceable disclaimer may be inoperable if unreasonably inconsistent with an express warranty).

The Limited Warranty contains specific guarantees that Portico "will not check, splinter, peel, rot, or suffer structural damage from fungal decay," and includes a clear disclaimer of all other express warranties. (Limited Warranty.) At the same time, the FAC alleges the existence of two express warranties regarding the ability of Portico to resist fungal growth. These express warranties guarantee that Portico has "a quality surface finish that reduces dirt and mold buildup," and is "able to resist moisture penetration and degradation from fungal rot." (FAC ¶¶ 49, 46.) Fiber's attempt to disclaim other express warranties is thus unenforceable because it is inconsistent with the language of its express warranties. Therefore, we conclude that the FAC alleges the existence of express warranties regarding Portico's resistance to fungal growth that are not limited by the disclaimer contained in the Limited Warranty.

4.      Basis of the Bargain

Fiber also argues that Plaintiffs' claims for breach of those two express warranties must be dismissed because the FAC does not allege that these warranties formed part of the basis of

Plaintiffs' bargain in their purchase of Portico.   An express warranty is actionable only if it "becomes part of the basis of the bargain."   13 Pa. Cons. Stat. § 2313(a)(1).  All "affirmations of fact by the seller, descriptions of the goods or exhibitions of samples," id. cmt. 3, become part of the basis of the bargain "unless good reason is shown to the contrary," id. cmt. 8, and "no particular reliance on such statements need be shown in order to weave them into the fabric of the agreement," id. cmt. 3.

Nonetheless, a warranty does not become part of the basis of the bargain unless plaintiffs show that they "read, heard, saw or knew of the advertisement containing the affirmation of fact or promise."  Cipollone v. Liggett Grp., Inc., 893 F.2d 541, 567 (3d Cir. 1990) (interpreting New Jersey law), rev'd on other grounds 505 U.S. 504 (1994).  Where alleged express warranties appear on a defendant's website, the plaintiffs must prove that they "read, heard, saw or knew of the statements made on defendants' website prior to the purchase of the [the product] or that they were induced to buy [the product] based on these statements."  Parkinson v. Guidant Corp., 315 F. Supp. 2d 741, 752 (W.D. Pa. 2004) (applying Pennsylvania law); see also Yurcic v. Purdue Pharma, L.P., 343 F. Supp. 2d 386, 395 (M.D. Pa. 2004) (applying Pennsylvania law and rejecting plaintiff's argument that his awareness of the warranties could be inferred from allegations that the warranties were made publically where the complaint did not also allege that he was aware of the statements).

The FAC alleges that Fiber "advertised its Portico products directly to consumers, including by way of advertisements and its Internet web site."  (FAC ¶ 48.)  The FAC does not, however, allege that Plaintiffs read, heard, saw, or knew of the express warranties alleged in paragraphs 49 and 46 of the FAC regarding Portico's resistance to fungal growth prior to purchasing Portico.  We therefore conclude that the facts alleged in the FAC do not support a

reasonable inference that the express warranties alleged in paragraphs 49 and 46 of the FAC became part of the basis of Plaintiffs' bargain. Fiber's Motion to Dismiss is, accordingly, granted as to Plaintiffs' breach of express warranty claim.[4]

      B.      <u>Breach of the Implied Warranty of Merchantability</u>

Fiber argues that Plaintiffs' breach of implied warranty claim should be dismissed because the FAC fails to allege that Portico decking materials are not fit for their ordinary purpose.[5] The implied warranty of merchantability warrants that goods "are fit for the ordinary purposes for which such goods are used." 13 Pa. Cons. Stat. § 2314(b)(3). This warranty guarantees a minimum level of quality:

> [the implied warranty of merchantability] does not require that the goods be the best quality, or the best obtainable, but it does require that they have an inherent soundness which makes them suitable for the purpose for which they are designed, that they be free from significant defects, that they perform in the way that goods of that kind should perform, and that they be of reasonable quality within expected variations and for the ordinary purpose for which they are used.

<u>Gall v. Allegheny Cnty. Health Dep't</u>, 555 A.2d 786, 789-90 (Pa. 1989) (citations omitted).

In arguing that the FAC does not allege that Plaintiffs' decks are unfit for ordinary use, Fiber asserts that the ordinary purpose of a deck is structural in that it provides an outdoor recreational space. Fiber argues that the spotting alleged in the FAC is not alleged to have made the decks unusable, as the FAC does not allege that Plaintiffs cannot sit, walk, or entertain on

---

[4] At the same time, however, we grant Plaintiffs' request for leave to amend the FAC to allege facts showing that Fiber's express warranties became part of the basis of the bargain for Plaintiffs' express warranty claims. "[I]f a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." <u>Phillips v. Cnty. of Allegheny</u>, 515 F.3d 224, 245 (3d Cir. 2008) (citing <u>Alston v. Parker</u>, 363 F.3d 229, 235 (3d Cir. 2004)).

[5] We note that Fiber has not argued that Portico's implied warranties, if any, were disclaimed by the Limited Warranty.

their Portico decks.  Fiber further notes that the FAC does not assert that the alleged fungal growth and spotting caused the boards to rot or caused their decks to fail.

Plaintiffs urge us to reject Fiber's essential proposition that decking material is merely purchased and used for its structural, rather than its aesthetic, characteristics and contend that the "ordinary purpose" of decking materials is to "look beautiful and [] enhance the appearance of their homes."  (Pls.' Mem. at 17.)  Plaintiffs maintain that Portico's latent defect caused fungal growth and ugly spotting that rendered it unfit for ordinary use as decking material.  See Isip v. Mercedes-Benz USA, LLC, 65 Cal. Rptr. 3d 695, 700 (Cal. Ct. App. 2007) (rejecting the notion that a car is fit for its ordinary purpose merely because it can provide transportation and explaining that "[a] vehicle that smells, lurches, clanks, and emits smoke over an extended period of time is not fit for its intended purpose"); Stearns v. Select Comfort Retail Corp., Civ. A. No. 08-2746, 2009 WL 1635931, at *8 (N.D. Cal. June 5, 2009) (allowing a claim for breach of the implied warranty of merchantability to proceed because "the fact that a person still may sleep on a moldy bed does not bar as a matter of law a claim for breach of the implied warranty of merchantability").

The FAC alleges that Fiber "marketed, promoted and sold Portico products to increase the aesthetic appeal, as well as to enhance the outdoor enjoyment, of a consumer's properties." (FAC ¶ 123.)  We agree with Plaintiffs that, based on these allegations in the FAC, it is reasonable to infer that the ordinary use of outdoor decking material, and the use for which Fiber intended Portico, is in part to "increase the aesthetic appeal" and "enhance the outdoor enjoyment" of Plaintiffs' residential properties.  (Id.)  Thus, the FAC adequately alleges that under the warranty of merchantability, the minimum quality required of Portico is one which the consumer expects to satisfy a certain aesthetic expectation.  See Isip, 65 Cal. Rptr. 3d at 700

(rejecting the notion that a car is fit for its ordinary purpose merely because it can provide transportation); Stearns, 2009 WL 1635931, at *8 (rejecting the notion that a bed is fit for its ordinary purpose merely because it can be slept on).[6]   The FAC alleges that Fiber breached this warranty by selling a defective product that develops ugly and irremediable dark spotting.   (FAC ¶ 122.)   Therefore, we conclude that the FAC has adequately pled a claim for breach of the implied warranty of merchantability, and accordingly, we deny Fiber's Motion to Dismiss as to Plaintiffs' claim for breach of the implied warranty of merchantability.

C.      Magnuson-Moss Consumer Products Warranty Act

Fiber argues that Plaintiffs' Magnuson-Moss Act claim should be dismissed because Fiber did not breach its express warranties and implied warranty of merchantability as required to state a claim under the Magnuson-Moss Act.   The Magnuson-Moss Act, 15 U.S.C. § 2301 *et seq*., provides a private right of action in federal court for consumers who are "damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation . . . under a written warranty, [or] implied warranty."   15 U.S.C. § 2310(d)(1).   "A claim under the [Magnuson-Moss Act] relies on the underlying state law claim."   Johansson v. Cent. Garden & Pet Co., 804 F. Supp. 2d 257, 265 (D.N.J. 2011) (citing Bailey v. Monaco Coach Corp., 350 F. Supp. 2d 1036, 1040 (N.D. Ga. 2004); see also Cooper v. Samsung Elecs. Am., Inc., 374 F. App'x 250, 254 (3d Cir. 2010) (affirming dismissal of Magnuson-Moss Act claims that were based on state law breach of warranty claims that had been dismissed); Demorato v. Carver Boat

---

[6] Fiber relies on Carey v. Chaparral Boats, Inc., 514 F. Supp. 2d 1152, 1155-56 (D. Minn. 2007), for the proposition that defects in a product's cosmetic appearance do not violate the implied warranty of merchantability.   In Carey, the district court concluded, on a summary judgment motion, that "overwhelming evidence demonstrates that cracks in the boat's finish are a cosmetic problem and in no way impact the boat's ordinary use."   Carey, 514 F. Supp. 2d at 1156.   In contrast, here the FAC alleges that Plaintiffs spent considerable money to "increase the aesthetic appeal" (FAC ¶ 123) of their homes by installing Portico decks, and thus the latent defect in Portico's design and manufacture impaired the decks' ordinary use *as* aesthetic goods.

Corps., Civ. A. No. 06-240, 2007 WL 1456207, at *8 (D.N.J. May 16, 2007) (recognizing that the Magnuson-Moss Act "provides for a federal cause of action for breach of implied warranty" brought under state law).

Fiber argues that Plaintiffs' Magnuson-Moss Act claim should be dismissed because the FAC fails to plead a state law claim for breach of express warranty or breach of the implied warranty of merchantability upon which relief may be granted. As we have concluded that the FAC adequately pleads a claim for breach of the implied warranty of merchantability, it follows that Plaintiffs' claim under the Magnuson-Moss Act for breach of the implied warranty of merchantability is also adequately pled and should not be dismissed. See 15 U.S.C. § 2301(7) (defining "implied warranty" under the Magnuson-Moss Act as "an implied warranty arising under State law"). Therefore, we conclude that the FAC adequately pleads a claim for breach of the Magnuson-Moss Act, and we deny Fiber's Motion to Dismiss as to Plaintiffs' Magnuson-Moss Act claim.

D.    Pennsylvania's Unfair Trade Practices and Consumer Protection Law

Fiber argues that Plaintiffs' Unfair Trade Practices and Consumer Protection Law claim should be dismissed because the economic loss doctrine bars the claim.[7] The Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. § 201-1, et seq. ("UTPCPL"), prohibits "unfair or deceptive acts or practices." 73 Pa. Stat. § 201-3. To bring a claim pursuant to the UTPCPL, a plaintiff must show that he "(1) purchased or leased goods or services primarily for a personal, family, or household purpose; (2) suffered an ascertainable loss of money or property; and (3) the loss occurred as a result of the use or employment by a person of

---

[7] Fiber also argues that the FAC fails to adequately plead deceptive conduct, reliance, and ascertainable loss under the UTPCPL. Because we conclude that Plaintiffs' UTPCPL claims are barred by the economic loss doctrine, we need not consider Fiber's other arguments under the UTPCPL.

a method, act, or practice declared unlawful by the UTPCPL." Baynes v. George E. Mason Funeral Home, Inc., Civ. A. No. 09-153, 2011 WL 2181469, at *4 (W.D. Pa. June 2, 2011) (citing 73 Pa. Stat. § 201-9.2(a)).

The economic loss doctrine "'prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract.'" Werwinski v. Ford Motor Co., 286 F.3d 661, 671 (3d Cir. 2002) (quoting Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 618 (3d Cir. 1995)). Consequently, the doctrine limits plaintiffs to their contract claims "'when loss of the benefit of a bargain is the plaintiff[s'] sole loss.'" Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc., 247 F.3d 79, 104 (3d Cir. 2001) (quoting Duquesne Light, 66 F.3d at 618).

Economic losses are defined as damages "for inadequate value, costs of repair and replacement of the defective product, or consequential loss of property, without any claim of personal injury or damage to *other* property." Palco Linings, Inc. v. Pavex, Inc., 755 F. Supp. 1269, 1276 (M.D. Pa. 1990) (internal quotation omitted) (cited with approval in Sun Co. Inc. (R&M) v. Badger Design & Constructors, Inc., 939 F. Supp. 365, 371 (E.D. Pa. 1996)). To avoid application of the economic loss doctrine, plaintiffs must articulate "harm that is distinct from the disappointed expectations evolving solely from an agreement." Sunburst Paper, LLC v. Keating Fibre Int'l, Inc., Civ. A. No. 06-3959, 2006 WL 3097771, at *3 n.3 (E.D. Pa. Oct. 30, 2006) (citing Auger v. The Stouffer Corp., Civ. A. No. 93-2529, 1993 WL 364622, at *2 (E.D. Pa. Aug. 31, 1993)).

Fiber argues that Plaintiffs' UTPCPL claims should be dismissed based on the economic loss doctrine because the FAC does not allege any damages other than contractual damages. The FAC alleges that Plaintiffs suffered monetary losses "through the purchase of the Portico products, the purchase of those Portico products at a premium price as compared to lumber

products, and the purchase of goods and other specialized products in unsuccessful efforts to remove the dark spotting and maintain the Portico products." (FAC ¶ 140.) These are economic losses flowing from the alleged breach of the contract between Plaintiffs and Fiber, and the FAC does not specifically articulate any additional losses caused by Fiber's deceptive conduct that are separate and distinct from Fiber's alleged breach of warranty.[8] The FAC thus fails to plead "any claim of personal injury or damage to *other* property" as required to avoid application of the economic loss doctrine. Palco Linings, 755 F. Supp. at 1276 (quotation omitted). We conclude, accordingly, that Plaintiffs' UTPCPL claim is barred by the economic loss doctrine, and we grant Fiber's Motion to Dismiss as to Plaintiffs' UTPCPL claim.

E.     Violation of State Consumer Protection Acts

Fiber argues that Plaintiffs' claims under the Massachusetts Consumer Protection Act, Mass. Ann. Laws Ch. 93A § 1 *et seq.* ("MCPA"), the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1 *et seq.* ("NJCFA"), and the New York Consumer Protection Act, N.Y. Gen. Bus. Law § 349 *et seq.* ("NYCPA"), should be dismissed because the FAC does not allege that Fiber engaged in deceptive conduct, Plaintiffs did not rely on the alleged deceptive conduct, and Plaintiffs have suffered no damages in reliance on the alleged deceptive conduct under those statutes. The MCPA, NJCFA, and NYCPA generally prohibit unfair or deceptive acts or practices in the conduct of trade, commerce, or business. See Mass. Gen. Laws Ann. ch. 93A §

---

[8] Plaintiffs do not deny that the economic loss doctrine may apply; rather, they argue that they are permitted to plead tort and contract-based claims in the alternative, and that courts should be reluctant to dismiss a UTPCPL claim at the motion to dismiss stage under the economic loss doctrine. See, e.g., Berger & Montague, P.C. v. Scott & Scott, LLC, 153 F. Supp. 2d 750, 754 (E.D. Pa. 2001) (recognizing that Federal Rule of Civil Procedure 8(d)(2) permits pleading in the alternative and, thus, refusing to dismiss conversion claim under economic loss doctrine). However, the issue is not whether Plaintiffs are permitted to plead causes of action in the alternative. The economic loss doctrine bars Plaintiffs' UTPCPL claim, on its face, because the FAC fails to allege harm distinct from "the disappointed expectations evolving solely from an agreement." Sunburst Paper, 2006 WL 3097771, at *3 n.3 (citing Auger, 1993 WL 364622, at *2).

2(a); N.J. Stat. Ann. § 56:8-2; N.Y. Gen. Bus. Law § 349(a).

To succeed on a claim brought pursuant to any one of these state consumer protection statutes, plaintiffs must establish a deceptive act or deceptive conduct.  Under the MCPA, an act or practice is deceptive if it "reasonably could be found to have caused the plaintiff to act differently than he otherwise would have acted."  Duclersaint v. Fed. Nat'l Mortg. Ass'n, 696 N.E.2d 536, 540 (Mass. 1998) (citations omitted).  The NJCFA covers three categories of unlawful practices: (1) "affirmative misrepresentation, even if not made with knowledge of its falsity or an intent to deceive," (2) "the knowing omission or concealment of a material fact, accompanied by an intent that others rely upon the omission or concealment," and (3) "a violation of a specific regulation promulgated under the [Act.]" Stoecker v. Echevarria, 975 A.2d 975, 990-91 (N.J. Super. Ct. App. Div. 2009) (citations omitted).  Under the NYCPA, a deceptive act or practice is defined as a representation or omission "likely to mislead a reasonable customer acting reasonably under the circumstances." Oswego Laborer's Local 214 Pension Fund v. Marine Midland Bank, N.A., 647 N.E.2d 741, 745 (N.Y. 1995).

Plaintiffs must also establish a causal connection between the defendant's deceptive act and the plaintiffs' injury.  Under the MCPA, causation is established by showing "a 'causal connection between the seller's deception and the buyer's loss,'" Hershenow v. Enterprise Rent-A-Car Co. of Boston, Inc., 840 N.E.2d 526, 532 (Mass. 2006) (quoting Kohl v. Silver Lake Motors, Inc., 343 N.E.2d 375, 379 (Mass. 1976)) (other citation omitted) or, if the deceptive act is based on nondisclosure of a material fact, "whether the plaintiff likely would have acted differently but for the nondisclosure." Casavant v. Norwegian Cruise Line, Ltd., 919 N.E.2d 165, 170 (Mass. App. Ct. 2009) (citing Brewster Wallcovering Co. v. Blue Mountain Wallcoverings, Inc., 864 N.E.2d 518, 540 n.57 (Mass. App. Ct. 2007)).  Under the NJCFA,

plaintiffs must articulate a "causal nexus" between the defendant's conduct and plaintiffs' ascertainable loss.  Arcand v. Brother Int'l Corp., 673 F. Supp. 2d 282, 303 (D.N.J. 2009). Under the NYCPA, plaintiffs need not prove reliance, but at the minimum, the complaint must allege that the plaintiffs saw the deceptive statements prior to purchasing the defendant's product, Gale v. Int'l Bus. Machs. Corp., 781 N.Y.S. 2d 45, 47 (N.Y. App. Div. 2004), and that defendant's deceptive act or practice "caused . . . harm." Oswego, 647 N.E.2d at 745.

An injury under these state consumer protection statutes is defined as: "'an invasion of a legally protected interest'" that "cause[s] a loss (either economic or noneconomic) to the holder of the legally protected interest" under the MCPA, Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 5 (1st Cir. 2007) (quoting Leardi v. Brown, 474 N.E.2d 1094, 1101 (Mass. 1985) (other citations omitted)); an "ascertainable loss," i.e. a loss that "'occurs when a consumer receives less than what was promised'" under the NJCFA, Ramirez v. STi Prepaid LLC, 644 F. Supp. 2d 496, 501 (D.N.J. 2009) (quoting Union Ink Co., Inc. v. AT&T Corp., 801 A.2d 361, 379 (N.J. Super. Ct. App. Div. 2002)) (other citations omitted); and "actual, although not necessarily pecuniary, harm" under the NYCPA. Oswego, 647 N.E.2d at 745.

Fiber argues that Plaintiffs' claims under the MCPA, NJCFA, and NYCPA should be dismissed because the FAC fails to allege deceptive conduct, causation, and injury under any of these state consumer protection statutes.  Fiber asserts that the FAC does not allege sufficient facts to support a claim that it engaged in deceptive conduct because the allegedly deceptive statements are all non-actionable puffery.  Fiber also contends that the FAC does not allege sufficient facts to establish causation because it does not allege that any Plaintiff saw, read, or heard these statements prior to purchasing Portico.  Finally, Fiber maintains that the FAC does not allege sufficient facts to establish injury because it does not allege that the decks have failed

to function or are unusable.

The FAC alleges that Fiber engaged in two kinds of deceptive conduct.  First, the FAC alleges that the affirmative promotion and sale of Portico was deceptive (FAC ¶¶ 144, 152, 165), with respect to Fiber's "marketing, advertising, sale, and warranting of Portico products."  (Id. ¶ 140.)[9]  The FAC alleges that Fiber advertised Portico as having "a quality surface that reduces dirt and mold buildup" (id. ¶ 49) and is "able to resist moisture penetration and degradation from fungal rot" (id. ¶ 46).  We determined in our analysis of Plaintiffs' express warranty claim that these representations constituted actionable warranties rather than non-actionable puffery.  For the same reasons, under the state consumer protection statutes, these two representations amount to more than mere puffery.  In addition, the FAC alleges that these statements constitute deceptive conduct under the MCPA, NJCFA, and NYCPA to the extent that Fiber expressly misrepresented Portico's ability to resist fungal growth (id. ¶¶ 46, 49, 144, 152, 165) and that Portico "failed to meet its advertised and warranted qualities" (id. ¶ 61).

However, the FAC fails to allege a causal connection between these representations and Plaintiffs' damages because the FAC does not allege any facts to establish that Plaintiffs saw, read, or were even aware of these representations prior to purchasing Portico.  See Hershenow, 840 N.E.2d at 532; Arcand, 673 F. Supp. 2d at 303; Oswego, 647 N.E.2d at 745.  Therefore, the FAC fails to adequately allege that Fiber violated the MCPA, NJCFA, or NYCPA by making deceptive representations about Portico's ability to resist fungal growth.

The FAC also alleges that Fiber engaged in deceptive conduct in that it "failed to inform consumers what [it] knew: moisture would immediately invade Portico products" and the decking surface would develop dark spotting caused by fungal growth.  (FAC ¶ 65.)  In other

---

[9] These allegations were set forth in Plaintiffs' claim under the UTPCPL, but were incorporated by reference into their claims under each consumer protection statute.  (FAC ¶¶ 142, 150, 161.)

words, Fiber failed to disclose the existence of a latent defect in its product.  We agree with Plaintiffs that the FAC adequately alleges that Fiber's nondisclosure of this defect constitutes a deceptive act under the consumer protection statutes because Fiber knew of the defect but intentionally withheld it from consumers, thus inducing Plaintiffs to buy a latently defective product.  (Id. ¶¶ 65-66.)  See Duclersaint, 696 N.E.2d at 540 (recognizing that a deceptive act is one which caused Plaintiffs to have "act[ed] differently" but for the nondisclosure); Stoecker, 975 A.2d at 990-91 (defining a deceptive act as a "knowing omission or concealment of a material fact" with "an intent that [consumers] rely upon the omission"); Oswego, 647 N.E.2d at 745 (describing a deceptive act as one which would mislead and induce a reasonable customer to purchase a product).  Therefore, the FAC adequately alleges that Fiber's nondisclosure of Portico's defect is a deceptive act under the MCPA, NJCFA, and NYCPA.

The FAC also alleges facts that support an inference of causation insofar as it asserts that the existence of the defect was a material fact and Plaintiffs would not have purchased Portico if Fiber "had disclosed their propensity to absorb water and microbes . . . and develop dark spotting caused by fungal growth."  (FAC ¶ 66.)  Finally, the FAC alleges sufficient facts to support the assertion that Plaintiffs were injured by purchasing Portico at a premium price and by purchasing ineffective cleaning products.  (Id. ¶ 140.)  Therefore, we conclude that the FAC adequately alleges a violation of the MCPA, NJCFA, and NYCPA—to the extent that it alleges facts demonstrating a deceptive act based on Fiber's failure to disclose Portico's latent defect—as well as causation and injury, and accordingly, we deny Fiber's Motion to Dismiss as to Plaintiffs' MCPA, NJCFA, and NYCPA claims.

F.    Declaratory Relief

The FAC asserts a claim for declaratory relief pursuant to 28 U.S.C. § 2201, specifically

seeking a declaration that Portico products are defective and that Fiber's express and/or implied warranties provide coverage for the defect.  (FAC ¶ 176.)  Under the Declaratory Judgment Act ("DJA"), a court may, "[i]n a case of actual controversy within its jurisdiction . . . declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  "[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act . . . ." Wilton v. Seven Falls Co., 515 U.S. 277, 282 (1995) (discussing Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491 (1942)).  The "actual controversy" requirement means that the court may only exercise its discretionary power if "there is a legitimate dispute between the parties."  Step-Saver Data Sys., Inc. v. Wyse Tech., 912 F.2d 643, 647 (3d Cir. 1990).

Courts generally consider several factors in determining whether to entertain an action under the DJA: "(1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy; (2) the convenience of the parties; (3) the public interest in settlement of the uncertainty of obligation; and (4) the availability and relative convenience of other remedies."  United States v. Pennsylvania, Dep't of Envtl. Res., 923 F.2d 1071, 1075 (3d Cir. 1991) (citations omitted).  Courts should also evaluate whether entertaining a declaratory judgment claim will "hinder judicial economy" or "create a remedy distinct from" other remedies sought by the plaintiffs.  Krajewski v. Am. Honda Fin. Corp., 557 F. Supp. 2d 596, 612 (E.D. Pa. 2008).  Where there is "some overlap" between plaintiffs' declaratory judgment claim and other substantive claims, courts may refuse to dismiss the declaratory judgment claim if the plaintiffs' "remaining claims have not been fully developed . . . [and] the Court cannot fully evaluate the extent of the overlap to determine whether declaratory judgment would serve [any] useful purpose in clarifying the legal rights and relationships at issue."

Johnson v. GEICO Cas. Co., 516 F. Supp. 2d 351, 357 (D. Del. 2007).

Fiber argues that Plaintiffs' DJA claim should be dismissed because none of Plaintiffs' substantive claims state a cause of action upon which relief can be granted, and thus there is no "actual controversy" between the parties. Because we have already determined that the FAC has pled viable claims under Claims I, III, V, VI, and VII, Fiber's argument fails on this point. Fiber also argues that Plaintiffs' DJA claim is unnecessarily duplicative of their other claims.

Plaintiffs seek a declaration that Portico is defective and that the express and implied warranties cover that defect. (FAC ¶ 176.) This claim does overlap with Plaintiffs' allegations under the various state consumer protection statutes to the extent that the FAC alleges Fiber concealed a latent defect in Portico products. However, a declaration as to the existence of a defect in Portico would apply to all classes, not only to those alleging violations of specific state consumer protection statutes. Plaintiffs' claim may also overlap with their claim for breach of the implied warranty of merchantability in that both claims request a declaration that Portico is defective. (Id. ¶¶ 134, 176.) However, Plaintiffs' breach of implied warranty claim only requests declaratory relief "additionally, or in the alternative" to refunds and replacements of their Portico decks. (Id. ¶¶ 133-34.) In addition, Fiber does not articulate any way in which entertaining Plaintiffs' DJA claim would hinder judicial economy or inconvenience the parties. Therefore, it is premature to dismiss Plaintiffs' DJA claim at this point, and accordingly, we deny Fiber's Motion to Dismiss as to Plaintiffs' DJA claim.

G.     Unjust Enrichment

The FAC asserts that Fiber was unjustly enriched from the profits received from selling Portico products, so, therefore, Plaintiffs are entitled to restitution and institution of a constructive trust disgorging all profits received by Fiber as a result of selling Portico products.

(FAC ¶¶ 178-80.)  Unjust enrichment is shown by "[(1)] benefits conferred on the defendant by plaintiff, [(2)] appreciation of such benefit by defendant, and [(3)] acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value."  Filippi v. City of Erie, 968 A.2d 239, 242 (Pa. Commw. Ct. 2009) (citing Wiernik v. PHH U.S. Mortg. Corp., 736 A.2d 616, 622 (Pa. Super. Ct. 1999)).

Fiber argues that Plaintiffs' unjust enrichment claim should be dismissed because its relationship with Plaintiffs is governed by a written limited warranty.  "Under Pennsylvania law, 'the quasi-contractual doctrine of unjust enrichment [is] inapplicable when the relationship between the parties is founded on a written agreement or express contract.'"  Hershey Foods Corp. v. Ralph Chapek, Inc., 828 F.2d 989, 999 (3d Cir. 1987) (alternation in original) (quoting Benefit Trust Life Ins. Co. v. Union Nat'l Bank, 776 F.2d 1174, 1177 (3d Cir. 1985)).

Nonetheless, plaintiffs may plead alternative theories of breach of contract and unjust enrichment where "there is any question as to the validity of contract in question." AmerisourceBergen Drug Corp. v. Allscripts Healthcare, LLC, Civ. A. No. 10-6087, 2011 WL 3241356, at *3 (E.D. Pa. July 29, 2011); see also Sheinman Provisions, Inc. v. Nat'l Deli, LLC, Civ. A. No. 08-453, 2008 WL 2758029, at *4 (E.D. Pa. July 15, 2008) (dismissing an unjust enrichment claim where a fully integrated contract governed the parties' relationship).  In addition, where a valid contract exists but only encompasses part of the parties' relationship, an unjust enrichment claim and a breach of contract claim may be maintained in the alternative. See United States v. Kensington Hosp., 760 F. Supp. 1120, 1135 (E.D. Pa. 1991) (refusing to dismiss an unjust enrichment claim where contract only encompassed the Government's fraud claims).

We have found that the FAC asserts a plausible claim for breach of the implied warranty

of merchantability, which constitutes a claim based on a contractual relationship between the parties.  However, this claim does not rely on the written Limited Warranty.  Since the written agreement does not encompass these warranties on which Plaintiffs rely in connection with their unjust enrichment claim, we conclude that the existence of the written agreement does not preclude Plaintiffs' unjust enrichment claim.  Therefore, we further conclude that the FAC pleads a plausible unjust enrichment claim, and accordingly, we deny Fiber's Motion to Dismiss as to Plaintiffs' unjust enrichment claim.

## IV.    CONCLUSION

For the foregoing reasons, Fiber's Motion to Dismiss is denied in part and granted in part.  The Motion is granted as to Claims II and IV, and those claims are dismissed.  The Motion is denied as to Claims I, III, VIII, and IX; and is denied as to Claims V, VI, and VII, to the extent that the FAC alleges a deceptive act based on failure to disclose a latent defect.  Plaintiffs' request for leave to amend the FAC is granted as to Claim II.  An appropriate order follows.

BY THE COURT:

/s/ John R. Padova
_____
John R. Padova, J.